# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DONALD MARTINEZ and FLORA MARTINEZ,**
Individuals and Guardians of **CRYSTAL MARTINEZ,**
**NICHOLAS MARTINEZ,** and **ZULEIKA JARAMILLO,**
and **DAVID MARTINEZ** and **CRYSTAL MARTINEZ,**
as Individuals,

                      **Plaintiff,**

v.                                                               **CIV. No. 98-395 JP/JHG**

**MICHAEL QUINONES and DEMETRIUS**
**ANAGNOSTAKOS,** in their Individual capacities
as Police Officers for the **STATE OF NEW MEXICO,**

                      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On November 4, 1998, Defendants filed their Motion for Summary Judgment (Doc. No. 8). After a careful review of the law and the briefs, I conclude that Defendants' motion should be denied with respect to Defendant Quinones and granted with respect to Defendant Anagnostakos.

## Background

Plaintiffs claim that Defendants violated their Fourth Amendment rights when Defendant Quinones entered and searched their home without a warrant and Defendant Anagnostakos failed to stop Quinones' entry and search. Defendants assert that they are entitled to qualified immunity on Plaintiffs' constitutional claims. The facts, based on the affidavits, depositions, and other admissible evidence on file and viewed in the light most favorable to the Plaintiffs, are as follows.

Defendants are New Mexico State Police Officers. On the evening of February 22, 1996, Defendants were dispatched to the home of Jeannie Martinez near Medanales, New Mexico. Defendant Quinones interviewed Martinez and her boyfriend, Bobby Padilla. Martinez and Padilla told Defendant Quinones that earlier the same evening Joe Chacon had come to Martinez' home with some of his friends. Chacon had been intoxicated and had initiated a physical confrontation with Padilla. After Padilla told Chacon to calm down, Chacon responded that he was going to come back and kill Padilla; Chacon then drove off in a 1975 blue pickup truck. Later, Chacon returned to Martinez' home with a rifle. Padilla opened the door, saw Chacon holding the weapon, and a struggle ensued. Padilla wrested the gun away from Chacon, who left the residence. The couple then called the police.

During the course of Defendant Quinones' interview of Martinez and Padilla, Padilla said, "There's Joe," or "There's Bolo" (Chacon's nickname). Quinones and Anagnostakos then saw a passing pickup truck matching the description of Joe Chacon's truck: a blue 1975 Chevrolet. However, Quiniones did not see the face of the driver or of any other occupant of the truck. Quinones was familiar with Chacon and believed him to be a dangerous, belligerent person with a reputation for carrying weapons. Defendant Quinones got into his car and pursued who he believed to be Chacon, who attempted to elude Quinones. Defendant Anagnostakos followed in his vehicle as backup to Defendant Quinones.

After a brief chase, the blue pickup truck ran into a ditch and became stuck. Defendant Quinones saw the driver of the truck and the two other occupants get out of the pickup truck. One person ran south toward a nearby house, the Plaintiffs' home, while the other two ran east toward the river. Defendant Quinones, who at some point had been joined by Officer Schultz,

pursued on foot the man who had run toward the Plaintiffs' residence. The man did not fit the description Defendant Quinones had of Joe Chacon, and therefore Defendant Quinones could not be sure that the man he was chasing was actually Chacon. In addition, Defendant Quinones could not see whether or not the fleeing man was carrying a weapon. The suspect ran around the corner of and behind the Plaintiffs' house, which was dark, and out of Defendant Quinones' view. Quinones believed that the suspect had entered the house, although he never actually saw anyone enter the home and observed no signs of a break-in or recent entry into the house.

Defendant Quinones then entered the Plaintiffs' home and searched the house without their consent, but did not find Chacon or any of the other occupants of the truck. Defendant Anagnostakos never entered Plaintiffs' home. During the search, Plaintiffs told Defendant Quinones that no one had come into the house and they asked Quinones to leave. Soon after the search of the Plaintiffs' home, State Police received a tip that the suspects were in a trailer across the road from the Martinez residence. Quinones and other state police officers surrounded the trailer and arrested two of the suspects.

## Analysis

**1.  Qualified Immunity**

Qualified immunity serves to protect government officers from having to defend themselves against baseless lawsuits. Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988). Thus, "[t]he doctrine of qualified immunity provides that government officials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rozek v. Topolnicki, 865 F.2d 1154, 1157 (10th Cir.

1989) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)).

Courts have adopted an objective test in determining whether a defendant is entitled to qualified immunity. Harlow v. Fizgerald, 457 U.S. at 815. In deciding if a defendant has violated clearly established law, the court examines whether the law was clearly established at the time of the defendant's actions. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985). As both the Supreme Court and the Tenth Circuit have held, " 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To find that the law was clearly established at the time of the alleged violation, ordinarily there must be a Supreme Court or Tenth Circuit decision on point. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). The requirement that the law be clearly established requires "some, but not necessarily precise, factual correspondence" between the cases predating the alleged violation and the facts in question. Calhoun v. Gaines, 982 F.2d 1470, 1475 (10th Cir. 1992).

Once the defendant raises the defense of qualified immunity, the plaintiff must first sufficiently assert the violation of a constitutional right. Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir. 1994) (citing Siegert v. Gilley, 500 U.S. 226, 231-33 (1991). The plaintiff must then show that the law had been clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. Martinez, 35 F.3d at 1490 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Thus, qualified immunity shields police officers from suit for damages if "a reasonable officer could have believed [a suspect's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers

4

possessed." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987). If the plaintiff does not meet this initial burden, "the government official is properly spared the burden and expense of proceeding any further," id. at 1457, and should be granted summary judgment.

On the other hand, if the plaintiff demonstrates to the court that the defendant's alleged conduct violated a clearly established right, then the "defendant assume[s] the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity." Id. This requires the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time. E.g., Cummins v. Campbell, 44 F.3d 847, 850 (10th Cir. 1994).

    A. Defendant Quinones

The first issue is whether Plaintiffs have sufficiently asserted the violation of a constitutional right by Defendant Quinones. Plaintiffs claim that Defendant Quinones violated their Fourth Amendment right to be free from unreasonable search and seizure when he entered their home without a warrant and without their permission and searched for Joe Chacon. Plaintiffs contend that Defendant Quinones lacked probable cause and exigent circumstances to justify the warrantless search of their home. See, e.g., United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir. 1988). Thus, Plaintiffs have sufficiently asserted a violation of their constitutional rights.

Second, Plaintiffs must show that the law was clearly established on February 22, 1996 that the warrantless entry into their house, under the circumstances presented here, would violate their Fourth Amendment rights. I conclude that Plaintiffs have met this burden.

5

The Supreme Court has consistently held that searches and seizures inside a house without a warrant are presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 587 (1980); Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). However, a warrantless entry for some limited purposes inside a home is permissible if the police have probable cause to search the residence and exigent circumstances are present. Payton, 445 U.S. at 578; see United States v. Erb, 596 F.2d 412, 417 (10th Cir. 1979).

It has long been established that:

> Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'

Adams v. Williams, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924 (1972) (quoting Beck v. Ohio, 379 U.S. 89, 91,

85 S.Ct. 223, 225 (1964)). The term "exigent circumstances" generally refers to "imminent danger of death or serious bodily harm, imminent danger of destruction of important property, response to an emergency, or hot pursuit of a fleeing felon." United States v. Gonzales, 763 F.2d 1127, 1132 n.5 (10th Cir. 1985). Exigent circumstances have been found where police have entered a home less than five minutes after receiving information that an armed robber had entered the residence, Warden v. Hayden, 387 U.S. 294, 298 (1967), and where police have pursued a suspect into her home after seeing her retreat inside the dwelling holding destructible evidence. United States v. Santana, 427 U.S. 38, 42-43 (1976). The police must have probable cause to believe the fugitive is inside the dwelling. See id. at 42.

Defendant Quinones did have probable cause, based upon the information he received

6

from Bobby Padilla and Jeannie Martinez, that Joe Chacon had committed an offense for which he could be arrested. However, Officer Quinones did not have probable cause to believe that the individual he was pursuing was, in fact, Joe Chacon, or even that the suspect was armed and dangerous. The only evidence Defendant Quinones had to support his belief that Joe Chacon was in the truck was Padilla's statement, "There goes Joe." Furthermore, Defendant Quinones did not see or identify any of the occupants of the blue truck as being Joe Chacon. Instead, Quinones stated that the fleeing suspect he was chasing did not fit the description of Joe Chacon. In addition, there was no probable cause to believe that the suspect had entered the Plaintiffs' home. Defendant Quinones saw the suspect run behind the house, but saw no evidence that he entered the home rather than hiding nearby or continuing to run away.

Because the Plaintiffs have met their burden to show that Defendant Quinones violated clearly established law, Defendant Quinones must demonstrate that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to Quinones at the time. Defendant Quinones has not met that burden.

Assuming, without deciding, that Defendant Quinones reasonably believed that he had probable cause to arrest the person he was chasing[1], Quinones did not have probable cause to believe that person was inside the Plaintiffs' home. There is no evidence that Defendant Quinones knew or believed that Joe Chacon lived in the home or even knew anyone who did. Furthermore,

---

[1] The Supreme Court has stated that "'(w)hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.'" Hill v. California, 401 U.S. 797, 802, 91 S.Ct. 1106, 1110 (1971) (quoting People v. Hill, 69 Cal.2d 550, 552, 446 P.2d 521, 522 (1968)).

7

Quinones did not see the suspect actually enter the house.  There is no evidence that Defendant Quinones observed any signs that someone had forced his way into the house or recently entered the home.  Consequently, there is a genuine issue of material fact as to whether exigent circumstances constituting "hot pursuit" of a fugitive existed at the time Defendant Quinones searched Plaintiffs' home.

    B.  <u>Defendant Anagnostakos</u>

Defendant Anagnostakos' motion for summary judgment should be granted.  Although the law is clearly established that a police officer may be liable for failing to intervene when a fellow officer uses excessive force in violation of the Fourth Amendment, <u>Mick v. Brewer</u>, 76 F.3d 1127, 1136 (10th Cir. 1996), the law is not clearly established that a police officer has a duty to stop another officer from performing what may turn out to be an unreasonable search.  Furthermore, an officer must first be present at the scene of and clearly observe an attempted deprivation of constitutional rights before the law will impose upon him a duty to prevent such a deprivation.  The uncontroverted evidence in this case shows that Defendant Anagnostakos remained by his patrol car at the ditch and did not go with Defendant Quinones and Officer Schultz to the Plaintiffs' residence.  Consequently, Defendant Anagnostakos had no duty to intervene and prevent the entry into and search of Plaintiffs' home.

**2.**    **State law claims**

Plaintiff's Complaint asserts that Defendants' actions constituted "a deprivation of federal and state constitutional rights, false imprisonment and violation of property rights within the meaning of Section 41-4-12 of the New Mexico Tort Claims Act."

As explained above, there is no evidence that Defendant Anagnostakos violated any of

8

Plaintiffs' rights. There is no evidence that Defendant Anagnostakos ever entered Plaintiffs' home, falsely imprisoned them, or violated any of their property rights. Consequently, all state law claims against Defendant Anagnostakos should be dismissed.

With respect to Defendant Quinones, Plaintiffs do not allege, nor are there any facts in the record to support an allegation on summary judgment, that they were at any time falsely imprisoned. There is no evidence to support a claim that Defendant Quinones ever detained Plaintiffs against their will.

Plaintiffs also claim that Defendant Quinones violated their property rights by trespassing on their land contrary to NMSA 1978, § 41-4-12. A trespass consists of an unauthorized entry upon the land of another. North v. Public Serv. Co. of New Mexico, 94 N.M. 246, 247, cert. denied, 94 N.M. 629, 614 (1980). Because there is a genuine issue of material fact as to whether Defendant Quinones entered Plaintiffs' land without lawful authority[2], summary judgment on this claim should be denied.

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion for Summary Judgment (Doc. No. 8) should be GRANTED as to all of Plaintiffs' claims against Defendant Demetrius Anagnostakos;

(2) Defendants' Motion for Summary Judgment (Doc. No. 8) should be DENIED as to Plaintiffs' claims against Defendant Michael Quinones for violation of the Fourth Amendment and for trespass; and

---

[2] This issue dovetails with the questions of whether Defendant Quinones was in hot pursuit of Joe Chacon and whether he had probable cause to believe Chacon was inside the Plaintiff's home at the time he entered Plaintiffs' property.

(3) Defendants' Motion for Summary Judgment (Doc. No. 8) should be GRANTED as to Plaintiffs' claims against Defendant Michael Quinones for false imprisonment.

*James A. Parker*
UNITED STATES DISTRICT JUDGE